# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT CASEY, LAWRENCE MALONEY, and RUTH MALONEY individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v<br><br>PROGRESS SOFTWARE CORPORATION,<br><br>Defendant. | CASE NO.<br><br>CLASS ACTION COMPLAINT<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Robert Casey, Lawrence Maloney, and Ruth Maloney ("Plaintiffs"), individually and on behalf of all others similarly situated, hereby file this class action complaint against Defendant Progress Software Corporation ("Progress" or "Defendant"). The following allegations are based upon personal knowledge with respect to the Plaintiffs' own acts, upon the investigation of their counsel, and upon information and belief as to all other matters:

## <u>INTRODUCTION</u>

1.      This is a putative class action that seeks to remedy Defendant's negligent failure to implement and maintain reasonable cybersecurity procedures that resulted in a data breach, which occurred on or about May or June 2023 (the "Data Breach").

2.      During the Class Period, Defendant failed to properly secure and safeguard Plaintiffs' and Class Members' protected personally identifiable information, including without limitation, full names, dates of birth, and Social Security numbers (these types of information, *inter alia,* being hereafter referred to, collectively, as "personal identifiable information" or "PII").[1]

---

[1]      Personally identifiable information ("PII") generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2

3.      Defendant's actions resulting in the Data Breach has impacted approximately forty million people, through more than 600 organizations, including pension fund management companies, corporations, government agencies, and law and accounting firms.[2]

4.      Plaintiffs bring this class action complaint to redress injuries related to the Data Breach, on behalf of himself and a Nationwide Class of similarly situated persons.

5.      As a direct and proximate result of Defendant's inadequate data security, and breach of its duty to handle PII with reasonable care, Plaintiffs' and Class Members' PII have been accessed by hackers and exposed to an untold number of unauthorized individuals.

6.      Plaintiffs, on behalf of himself, and the Class as defined herein, bring claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment, and declaratory judgment, seeking actual and putative damages, with attorneys' fees, costs, and expenses, and appropriate injunctive and declaratory relief.

7.      Plaintiffs and Class Members are now at a significantly increased and certainly impending risk of fraud, identity theft, misappropriation of health insurance benefits, intrusion of their health privacy, and similar forms of criminal mischief, risk which may last for the rest of their lives.  Consequently, Plaintiffs and Class Members must devote substantially more time, money, and energy to protect themselves, to the extent possible, from these crimes.

8.      To recover from Defendant for these harms, Plaintiffs and the Class seek damages in an amount to be determined at trial, declaratory judgment, and injunctive relief requiring

---

C.F.R. §200.79.  At a minimum, it includes all information that on its face expressly identifies an individual.  PII is also generally defined to include certain identifiers that do not on its face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers).

[2]      Raphael Satter & Zeba Siddiqui, *Analysis: MOVEit hack spawned over 600 breaches but is not done yet – cyberanalysts.*  REUTERS (Aug. 9, 2023 at 1:18 PM PDT), https://www.reuters.com/technology/moveit-hack-spawned-around-600-breaches-isnt-done-yet-cyber-analysts-2023-08-08/.

Defendant to: 1) disclose, expeditiously, the full nature of the Data Breach and the types of PII accessed, obtained, or exposed by the hackers; 2) implement improved data security practices to reasonably guard against future breaches of PII possessed by Defendant; and 3) provide, at its own expense, all impacted victims with lifetime identity theft protection services.

## PARTIES

9.      Plaintiff Robert Casey is a citizen and resident of the Commonwealth of Pennsylvania.  Plaintiff received a Notice of Data Incident letter ("Notice") dated July 21, 2023, from Pension Benefit Information LLC that his personal identifying information provided to Defendant by Genworth Life Insurance Company ("GLIC") was part of the Data Breach that is the subject of this action.

10.      Plaintiff Lawrence Maloney is a citizen and resident of the Commonwealth of Pennsylvania.  Plaintiff received the Notice dated July 21, 2023, from Pension Benefit Information LLC that his personal identifying information provided to Defendant by GLIC was part of the Data Breach that is the subject of this action.

11.      Plaintiff Ruth Maloney is a citizen and resident of the Commonwealth of Pennsylvania.  Plaintiff received the Notice dated July 21, 2023, from Pension Benefit Information LLC that her personal identifying information provided to Defendant by GLIC was part of the Data Breach that is the subject of this action.

12.      Since receiving the Notice, Plaintiffs have been required to expend their valuable time and resources communicating with the credit bureaus to place a freeze on their credit in order to prevent any misuses of their PII– time he would not have had to expend but for the Data Breach.

13.      Since receiving the Notice, Plaintiffs have also received a significant increase in spam calls as compared to prior to the Data Breach.  Plaintiffs have also suffered emotional distress as a result of their PII being accessed and exposed to unauthorized persons.

14.    As a result of the Data Breach, Plaintiffs will continue to be at heightened and certainly impending risk for fraud and identity theft, and suffer accompanying damages for years to come.

15.    Defendant Progress Software is a Delaware corporation with its principal place of business located at 15 Wayside Rd. Suite 400, Burlington, Massachusetts 01803.

## JURISDICTION & VENUE

16.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

17.    This Court has personal jurisdiction over Defendant because Defendant resides in this District, and at all relevant times it has engaged in substantial business activities in Massachusetts.

18.    Pursuant to 28 U.S.C. §1391(b)(1) and (2), venue is proper in this District because it is where the Defendant resides and is where a substantial part of the events or omissions giving rise to the claims occurred.  Specifically, Defendant's failure to implement and maintain reasonable security procedures and practices with respect to its MOVEit product.  In addition, Plaintiffs further alleges that upon information and belief members of the Class defined below reside in this District.

## FACTUAL BACKGROUND

### A.    Progress Software and the Services it Provides.

19.    Progress Software is a Massachusetts-based company that develops and sells a variety of software for businesses, including the secure file transfer application MOVEit.

Defendant advertises that more than 100,000 enterprises run business systems through its platforms, and 6 million business users work with apps running on Defendant's technologies.[3]

20.    Defendant's various business and government customers retain sensitive information including, but not limited to, bank account information, addresses, driver's license numbers, dates of birth, and social security numbers, and use Defendant's MOVEit product to securely transfer files containing that sensitive information.

21.    While administering these services, Progress receives, handles, and collects consumer PII, which includes, *inter alia*, names, addresses, dates of birth, and Social Security numbers.

22.    By obtaining, collecting, and storing Plaintiffs' and the Class Members' PII, Defendant knew, or should have known, that it was a prime target for hackers given the significant amount of sensitive personal information processed through its customers' computer data and storage systems.  Defendant's knowledge is underscored by the massive number of data breaches that have occurred in recent years.

23.    Despite knowing the prevalence of data breaches, Defendant failed to prioritize data security by adopting reasonable data security measures to prevent and detect unauthorized access to its highly sensitive systems and databases.  Defendant has the resources to prevent a breach, but neglected to adequately invest in data security, despite the growing number of well-publicized breaches.  Defendant failed to undertake adequate analyses and testing of its own systems, training of its own personnel, and other data security measures as described herein to ensure vulnerabilities were avoided or remedied and that Plaintiffs' and Class Members' data were protected.

---

[3]    PROGRESS, https://investors.progress.com/? ga=2.130524045.306488999.1689141297-1144817577.1689141297& gl= Pklrbgt* ga*MTE0NDgxNzU3Ny4xNjg5MTQxMjk3* ga 9JSNBCSF54*MTY4OTE0MzY0MC4yLjAu MTY4OTE0MzY0NC41Ni4wLjA (last visited Aug. 20, 2023).

B.    **The Data Breach**

24.    A notice dated July 21, 2023 was sent to each Plaintiff by Pension Benefit Information LLC which stated:

> On or around May 31, 2023, Progress Software, the provider of MOVEit Transfer software disclosed a vulnerability in their software that had been exploited by an unauthorized third party. PBI utilizes MOVEit in the regular course of our business operations to securely transfer files. PBI promptly launched an investigation into the nature and scope of the MOVEit vulnerability's impact on our systems. Through the investigation, we learned that the third party accessed one of our MOVEit Transfer servers on May 29, 2023 and May 30, 2023 and downloaded data. We then conducted a manual review of our records to confirm the identities of individuals potentially affected by this event and their contact information to provide notifications. We recently completed this review.

25.    According to the Notice, the breach resulted in individual's name, address, and social security number being compromised and acquired by unauthorized actors.[4]

26.    The Notice further confirmed that Plaintiffs' and Class Members' PII were exfiltered by hackers. Plaintiffs are informed and believe that all categories of PII they provided were further subject to unauthorized access, disclosure, theft, exfiltration, modification, use, or destruction. Plaintiffs are informed and believe that criminals would have no purpose for hacking Defendant's software other than to exfiltrate, steal, destroy, use, or modify as part of their ransom attempts, the coveted personal information stored or processed by Defendant's customers.

27.    The personal information exposed by Defendant as a result of its inadequate data security is highly valuable on the black market to phishers, hackers, identity thieves, and cybercriminals. Stolen personal information is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines. Law enforcement

---

[4]    An example of the Notice received by Plaintiffs and other Class Members can be found at: https://oag.ca.gov/system/files/Sample%20Notification%20Letter_0.pdf (last visited Aug. 20, 2023).

has difficulty policing the dark web due to this encryption, which allows users and criminals to conceal identities and online activity.

28.     When malicious actors infiltrate companies and exfiltrate the personal information that those companies store, or have access to, that stolen information often ends up on the dark web because the malicious actors buy and sell that information for profit.

29.     The harm resulting from a data and privacy breach manifests in a number of ways, including identity theft and financial fraud, and the exposure of a person's PII through a data breach ensures that such person will be at a substantially increased and certainly impending risk of identity theft crimes compared to the rest of the population, potentially for the rest of their lives.  Mitigating that risk – to the extent it is even possible to do so – requires individuals to devote significant time and money to closely monitor their credit, financial accounts, health records, and email accounts, and to take a number of additional prophylactic measures.

30.     The information compromised in this unauthorized cybersecurity attack involves sensitive PII, which is significantly more valuable to consumers than the loss of, for example, credit card information in a retailer data breach because, there, consumer victims can cancel or close credit and debit card accounts; whereas here, the information compromised such as social security numbers are difficult, if not impossible to change.

31.     Indeed, once PII is stolen, it is then sold to cybercriminals who use it to gain access to various areas of the victim's digital life, including bank accounts, social media, credit card, and tax details.  This can lead to additional personal information being harvested from the victim, as well as personal information from family, friends, and colleagues of the original victim.

32.     Unauthorized data breaches, such as these, facilitate identity theft as hackers obtain consumers' personal information and thereafter use it to siphon money from current accounts, open

new accounts in the names of their victims, or sell consumers' personal information to others who do the same.

33.     The high value of PII to criminals is further evidenced by the prices they will pay through the dark web.  Numerous sources cite dark web pricing for stolen identity credentials.  For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[5]  Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[6]  Criminals can also purchase access to entire company data breaches from $999 to $4,995.[7]

34.     These criminal activities have and will result in devastating financial and personal losses to Plaintiffs and Class Members.  For example, it is believed that certain PII compromised in the 2017 Experian data breach was being used, three years later, by identity thieves to apply for COVID-19-related benefits in the state of Oklahoma.[8]  Such fraud will be an omnipresent threat for Plaintiffs and Class Members for the rest of their lives.  They will need to remain constantly vigilant.

35.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or

---

[5]     Anita George, *Your personal data is for sale on the dark web.  Here's how much it costs,* DIGITAL TRENDS, (Oct. 16, 2019), https://www.Digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited Aug. 20, 2023).

[6]     Brian Stack, *Here's How Much Your Personal Information Is Selling for on the Dark Web,* EXPERIAN, (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited Aug. 20, 2023).

[7]     VPNOVERVIEW, *In the Dark,*  https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/  (last visited Aug. 20, 2023).

[8]     *See* Jon Fingas, *Fraud ring uses stolen data to scam unemployment insurance programs*, ENGADGET, (May 17, 2020), https://www.engadget.com/stolen-data-used-for-unemployment-fraud-ring-174618050.html, *see also* Lily Hay Newman, *The Nigerian Fraudsters Ripping Off the Unemployment System*, WIRED, (May 19, 2020), https://www.wired.com/story/nigerian-scammers-unemployment-system-scattered-canary/

in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

36.     Identity thieves can use PII, such as that of Plaintiffs and Class Members which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims.  For instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

37.     The ramifications of Defendant's failure to keep secure Plaintiffs' and Class Members' PII are long lasting and severe.  Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.  Indeed, Plaintiffs' and Class Members' PII was taken by hackers to engage in identity theft or to sell it to other criminals who will purchase the PII for that purpose.  The fraudulent activity resulting from the Data Breach may not come to light for years.

38.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used.  According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft.  Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may

continue for years.  As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[9]

39.    When cyber criminals access financial information and other PII—as they did here—there is no limit to the amount of fraud to which Defendants may have exposed Plaintiffs and Class Members.

40.    Federal and state governments have established security standards and have issued recommendations to minimize unauthorized data disclosures and the resulting harm to individuals and financial institutions.  Indeed, the FTC has issued guidance for businesses that highlight the importance of reasonable data security practices.

41.    According to the FTC, the need for data security should be factored into all business decision-making.[10]  In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.[11]  Among other things, the guidelines note businesses should properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct security problems.  The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of the breach.

---

[9]    U.S. Gen. Accounting Office, *GAO-07-737, Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, at 29 (2007), http://www.gao.gov/new.items/d07737.pdf (last visited Aug. 20, 2023).

[10]    *See* Federal Trade Commission, *Start with Security: A Guide For Business* (2015), https://www.ftc.gov/business-guidance/resources/start-security-guide-business (last visited Aug. 20, 2023).

[11]    *See* Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf    (last visited Aug. 20, 2023).

42.     Also, the FTC recommends that companies limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor for suspicious activity on the network, and verify that third-party service providers have implemented reasonable security measures.[12]

43.     Highlighting the importance of protecting against unauthorized data disclosures, the FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect personal information, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §45.

44.     Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

45.     Defendant's failure to safeguard against a cybersecurity attack is exacerbated by the repeated warnings and alerts from public and private institutions, including the federal government, directed to protecting and securing sensitive data.  Experts studying cybersecurity routinely identify companies such as Defendant's customers that collect, process, and store massive amounts of data on cloud-based systems as being particularly vulnerable to cyberattacks because of the value of the personal information that they collect and maintain.  Accordingly, Defendant knew or should have known that its customers were a prime target for hackers.

46.     The prevalence of data breaches and identity theft has increased dramatically in recent years, accompanied by a parallel and growing economic drain on individuals, businesses, and government entities in the United States.  In 2021, there were 4,145 publicly disclosed data

---

[12]     *See id.*

breaches, exposing 22 billion records. The United States specifically saw a 10% increase in the total number of data breaches.[13]

47.    In tandem with the increase in data breaches, the rate of identity theft complaints has also increased over the past few years. For instance, in 2017, 2.9 million people reported some form of identity fraud as compared to 5.7 million people in 2021.[14]

48.    According to the 2021 Thales Global Cloud Security Study, more than 40% of organizations experienced a cloud-based data breach in the previous 12 months. Yet, despite these incidents, the study found that nearly 83% of cloud-based businesses still fail to encrypt half of the sensitive data they store in the cloud.[15]

49.    Upon information and belief, Defendant did not encrypt Plaintiffs' and Class Members' personal information involved in the Data Breach.

50.    As detailed above, Defendant is a large, sophisticated software company with the resources to deploy robust cybersecurity protocols. It knew, or should have known, that the development and use of such protocols were necessary to fulfill its statutory and common law duties to Plaintiffs and Class Members. Its failure to do so is, therefore, intentional, willful, reckless and/or grossly negligent.

51.    Defendant disregarded the rights of Plaintiffs and Class Members by, *inter alia,* (i) intentionally, willfully, recklessly, and/or negligently failing to take adequate and reasonable

---

[13]    FLASHPOINT, *2021 Year End Report – Data Breach*, RISK BASED SEC. (Feb. 4, 2022), https://flashpoint.io/resources/research/2021-year-end-report-data-breach-quickview/ (last visited Aug. 20, 2023).

[14]    *Facts + Statistics: Identity theft and cybercrime,* INS. INFO. INST., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime#Identity%20Theft%20And%20Fraud%20Reports,%202015-2019%20 (last visited Aug. 20, 2023).

[15]    Maria Henriquez, *40% of organizations have suffered a cloud-based data breach,* SECURITY (Oct. 29, 2021), https://www.securitymagazine.com/articles/96412-40-of-organizations-have-suffered-a-cloud-based-data-breach (last visited Aug. 20, 2023).

measures to ensure that its customer's network servers were protected against unauthorized intrusions when using the MOVEit program; (ii) failing to disclose that it did not have adequately robust security protocols and training practices in place to safeguard Plaintiffs' and Class Members' PII; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; and (iv) failing to provide its customers, and therefore Plaintiffs and Class members, with prompt and accurate notice of the Data Breach.

### *Plaintiffs' Facts*

52.    Defendant's customer GLIC received highly sensitive PII from Plaintiffs and Class Members.

53.    As a result of the vulnerability in Defendant's MOVEit product, the information Plaintiffs provided to GLIC was among the data accessed and exfiltrated by an unauthorized third party in the Data Breach.

54.    At all relevant times, Plaintiffs are and were members of the Class as defined herein.

55.    Plaintiffs' PII was exposed in the Data Breach because Defendant stored and/or controlled Plaintiffs' PII at the time of the Data Breach.

56.    Plaintiffs received the Notice from GLIC, stating that their name, address, and social security number, which was in the possession, custody and/or control of Defendant, was stolen by cybercriminals in the Data Breach.

57.    As a result, Plaintiffs spent time dealing with the consequences of the Data Breach, which included and continues to include, signing up for Defendant's offered credit monitoring and identity theft insurance; changing passwords and resecuring their own computer network; contacting financial institutions; self-monitoring their accounts for any indication of fraudulent activity, which may take years to detect; and, seeking legal counsel regarding their options for

remedying and/or mitigating the effects of the Data Breach. This time has been lost forever and cannot be recaptured.

58.    Plaintiffs suffered actual injury in the form of damages to and diminution in the value of their PII–a form of intangible property that they entrusted to Defendant, which was compromised in and as a result of the Data Breach.

59.    Plaintiffs suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of privacy, as well as anxiety over the impact of cybercriminals accessing, using, and selling their PII.

60.    Plaintiffs have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse of their PII, in combination with his name, now in the hands of unauthorized third parties/criminals.

61.    Plaintiffs have a continuing interest in ensuring that their PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

62.    Plaintiffs' and Class Members' PII, including their names and social security numbers, were in the possession, custody and/or control of Defendant. Plaintiffs believed that Defendant would protect and keep their PII protected, secure, and safe from unlawful disclosure.

63.    Plaintiffs and Class Members have spent, and will continue to spend, time and effort monitoring their accounts to protect themselves from identity theft. Plaintiffs and Class Members remain concerned for their personal security and the uncertainty of what personal information was exposed to hackers and/or posted to the dark web.

64.    As a direct and foreseeable result of Defendant's negligent failure to implement and maintain reasonable data security procedures and practices and the resultant breach of its systems,

Plaintiffs and Class Members, have suffered harm in that their sensitive PII has been exposed to cybercriminals and they have an increased stress, risk, and fear of identity theft and fraud. This is not just a generalized anxiety of possible identify theft, privacy, or fraud concerns, but a concrete stress and risk of harm resulting from an actual breach and accompanied by actual instances of reported problems suspected to stem from the Data Breach.

65.     Plaintiffs and Class Members are especially concerned about the misappropriation of their Social Security numbers. Social Security numbers are among the most sensitive kinds of personal information to have been stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change.

66.     Even when such numbers are replaced, the process of doing so results in a major inconvenience to the subject person, requiring a wholesale review of the person's relationships with government agencies and any number of private companies in order to update the person's accounts with those entities.

67.     The Social Security Administration even warns that the process of replacing a Social Security number is a difficult one that creates other types of problems, and that it will not be a panacea for the affected person:

> Keep in mind that a new number probably will not solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) likely will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number will not guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.

> If you receive a new Social Security Number, you should not be able to use the old number anymore.

> For some victims of identity theft, a new number actually creates new problems. If the old credit information is not associated with your new number, the absence of

any credit history under the new number may make more difficult for you to get credit.[16]

68.    Social Security numbers allow individuals to apply for credit cards, student loans, mortgages, and other lines of credit – among other services.  Often, Social Security numbers can be used to obtain medical goods or services, including prescriptions.  They are also used to apply for a host of government benefits.  Access to such a wide range of assets makes social security numbers a prime target for cybercriminals and a particularly attractive form of PII to steal and then sell.

69.    The Social Security Administration further stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you.  Identity thieves can use your number and your good credit to apply for more credit in your name.  Then, they use the credit cards and don't pay the bills, it damages your credit.  You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought.  Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[17]

70.    Plaintiffs and Class Members are well aware that their sensitive PII, which includes their Social Security numbers and potentially banking information, are at risk of being available to other cybercriminals on the dark web.  Accordingly, Plaintiffs and Class Members have suffered harm in the form of increased stress, fear, and risk of identity theft and fraud resulting from the Data Breach.  Additionally, Plaintiffs and Class Members have incurred, and/or will incur, out-of-pocket expenses related to credit monitoring and identify theft prevention to address these concerns.

---

[16]    *Identify Theft and Your Social Security Numbers*, SOCIAL SEC. ADMIN. (July 2021), https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited on May 8, 2023).

[17]    U.S. SOCIAL SEC. ADMIN., *Identify Theft and Your Social Security Numbers*, (2021), https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited on Aug. 20, 2023).

## CLASS ACTION ALLEGATIONS

71.     Plaintiffs bring this action on behalf of himself and all other similarly situated persons pursuant to Federal Rule of Civil Procedure 23, including Rule 23(b)(1)-(3) and (c)(4). Plaintiffs seek to represent the following Class:

> All persons in the United States and its territories whose personal information was compromised in or as a result of Defendant's Data Breach which was discovered on or about May or June 2023 (the "Class").

72.     Excluded from the Class are: Defendant and its parents, subsidiaries, affiliates, officers, directors, or employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely request to be excluded from this proceeding using the correct protocol for opting out; and the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

73.     Plaintiffs reserve the right to amend or modify the class definitions with greater particularity or further division into subclasses or limitation to particular issues.

74.     This action has been brought and may be maintained as a class action under Rule 23 because there is a well-defined community of interest in the litigation and the proposed classes are ascertainable, as described further below.

75.     Numerosity: The potential members of the Class as defined are so numerous that the joinder of all members of the Class is impracticable.  While the precise number of Class Members at issue has not been determined, Plaintiffs believe the cybersecurity breach affected millions of thousands of individuals nationwide.

76.     Commonality: There are questions of law and fact common to Plaintiffs and the Class that predominate over any questions affecting only the individual members of the Class.  The common questions of law and fact include, but are not limited to, the following:

a)      Whether Defendant had a duty to protect the PII of Plaintiffs and Class Members;

b)      Whether Defendant was negligent in collecting and storing Plaintiffs' and Class Members' PII, and breached its duties thereby;

c)      Whether Plaintiffs and Class Members are entitled to damages as a result of Defendant's wrongful conduct;

d)      Whether Plaintiffs and Class Members are entitled to restitution as a result of Defendant's wrongful conduct;

e)      Whether Defendant owed a duty to Plaintiffs and Class Members to exercise due care in collecting, storing, processing, and safeguarding their personal information being transferred through the MOVEit program;

f)      Whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of personal information of Class Members being transferred through the MOVEit program;

g)      Whether Defendant acted negligently in connection with the vulnerabilities in the MOVEit program that allowed unauthorized access to Plaintiffs' and Class Members' personal information;

h)      Whether Defendant knew or should have known that it did not employ reasonable measures to keep Plaintiffs' and Class Members' personal information secure and prevent loss or misuse of that personal information;

i)      Whether Defendant adequately addressed and fixed the vulnerabilities in the MOVEit program which permitted the Data Breach to occur;

j)      Whether Plaintiffs and Class Members are entitled to credit monitoring and other monetary relief;

k)      Whether Defendant's failure to implement and maintain reasonable security procedures and practices constitutes a violation of the Federal Trade Commission Act, 15 U.S.C. §45(a).

77.    <u>Typicality.</u> The claims of the named Plaintiffs are typical of the claims of the Class Members because all had their personal information compromised as a result of Defendant's failure to implement and maintain reasonable security measures and the consequent Data Breach.

78.    <u>Adequacy of Representation</u>.  Plaintiffs will fairly and adequately represent the interests of the Class.  Counsel for Plaintiffs are experienced and competent in consumer and employment class actions, as well as various other types of complex and class litigation.

79.    <u>Superiority and Manageability</u>.  A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all Plaintiffs is not practicable, and questions of law and fact common to Plaintiffs predominate over any questions affecting only Plaintiffs.  Plaintiffs has been damaged and is entitled to recovery by reason of Defendant's unlawful failure to adequately safeguard their data.  Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.  As any civil penalty awarded to any individual class member may be small, the expense and burden of individual litigation make it impracticable for most class members to seek redress individually.  It is also unlikely that any individual consumer would bring an action solely on their own behalf pursuant to the theories asserted herein. Additionally, the proper measure of civil penalties for each wrongful act will be answered in a consistent and uniform manner.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action, as

Defendant's records will readily enable the Court and Parties to ascertain affected companies and their employees.

80. <u>Predominance.</u>  Common questions of law and fact predominate over any questions affecting only individual Class Members.  Similar or identical violations, business practices, and injuries are involved.  Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.  For example, Defendant's liability and the fact of damages is common to Plaintiffs and each member of the Class.  If Defendant breached its duty to Plaintiffs and Class Members, then Plaintiffs and each Class member suffered damages by that conduct.

81. <u>Injunctive Relief.</u>  Defendant has acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the Class under Fed. Civ. P. 23(b)(2).

82. <u>Ascertainability.</u>  Members of the Class are ascertainable.  Class membership is defined using objective criteria and Class Members may be readily identified through Defendant's books and records.

83. Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

84. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of the matters and the parties' interests therein.  Such particular issues include, but are not limited to:

(a)      Whether Defendant owed a legal duty to Plaintiffs and Class Members to maintain security in the transfer of their personal information;

(b)      Whether Defendant breached that legal duty to Plaintiffs and Class Members to exercise due care in maintaining security in the transfer of their personal information;

(c)      Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

(d)      Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the personal information compromised in the breach; and,

(e)      Whether Class Members are entitled to actual damages, credit monitoring, injunctive relief, and/or statutory damages, as a result of Defendant's wrongful conduct as alleged herein.

## CAUSES OF ACTION

### COUNT I
**Negligence**
**(On behalf of Plaintiffs and the Class against Defendant)**

85.    Plaintiffs reallege and incorporates by reference the preceding factual allegations as if fully set forth herein.

86.    Defendant owed a duty under common law to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PII, including securing the data being transferred through the MOVEit product from being compromised, stolen, accessed, and/or misused by unauthorized persons.

87.    Defendant has a common law duty to prevent foreseeable harm to others. That duty includes a duty to implement and maintain reasonable security procedures and practices

appropriate to the nature of the personal information that were compliant with and/or better than industry-standard practices.

88.    Defendant's duties included a duty to design, maintain, and test its security systems to ensure that Plaintiffs' and Class Members' personal information was adequately secured and protected, to implement processes that would detect a breach of its security system in a timely manner, to timely act upon warnings and alerts, including those generated by its own security systems regarding intrusions to its networks, and to promptly, properly, and fully notify its clients, Plaintifsf, and Class Members of any data breach.

89.    Defendant's duties to use reasonable care arose from several sources, including but not limited to those described below.

90.    Defendant's duty existed because Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices.  In fact, not only was it foreseeable that Plaintiffs and Class Members would be harmed by the failure to protect their personal information because hackers routinely attempt to steal such information and use it for nefarious purposes, but Defendant also knew that it was more likely than not that Plaintiffs and other Class Members would be harmed.

91.    By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' personal information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' personal information from disclosure.

92.    Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their personal information.

93.     Defendant breached the duties it owed to Plaintiffs and Class Members described above and thus was negligent.  Defendant breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols, and practices sufficient to protect the personal information of Plaintiffs and Class Members; (b) prevent the breach; (c) timely detect the breach; (d) maintain security systems consistent with industry standards; (e) timely disclose that Plaintiffs' and Class Members' personal information in Defendant's possession had been or was reasonably believed to have been stolen or compromised; (f) failing to comply fully even with its own purported security practices.

94.     Defendant knew or should have known of the risks of transferring personal information through its product and the importance of maintaining secure systems, especially in light of the increasing frequency of ransomware attacks.  The sheer scope of Defendant's operations further shows that Defendant knew or should have known of the risks and possible harm that could result from its failure to implement and maintain reasonable security measures.  Upon information and belief, this is but one of the several vulnerabilities that plagued Defendant's systems and led to the Data Breach.

95.     Through Defendant's acts and omissions described in this complaint, including Defendant's failure to provide adequate security and its failure to protect the personal information of Plaintiffs and Class Members from being foreseeably captured, accessed, exfiltrated, stolen, disclosed, accessed, and misused, Defendant unlawfully breached their duty to use reasonable care to adequately protect and secure Plaintiffs' and Class Members' personal information.

96.     Defendant further failed to timely and accurately disclose to clients, Plaintiffs, and Class Members that their personal information had been improperly acquired or accessed and/or

was available for sale to criminals on the dark web. Plaintiffs' and Class Members could have taken action to protect their personal information if they were provided timely notice.

97.     But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and Class Members, their personal information would not have been compromised.

98.     Plaintiffs and Class Members relied on Defendant to keep their personal information confidential and securely maintained, and to use this information for business purposes only, and to make only authorized disclosures of this information.

99.     As a direct and proximate result of Defendant's negligence, Plaintiffs and Class Members have been injured as described herein, and are entitled to damages, including compensatory and nominal damages, in an amount to be proven at trial. As a result of Defendant's failure to protect PII, Plaintiffs' and Class Members' PII has been accessed by malicious cybercriminals. Plaintiffs' and the Class Members' injuries include:

(a)     theft of their PII;

(b)     costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

(c)     costs associated with time spent and loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

(d)     the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their personal information being placed in the hands of criminals;

(e)      damages to and diminution of value of the PII entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiffs' and the Class Members' data against theft and not allow access and misuse of their data by others;

(f)      continued risk of exposure to hackers and thieves of their personal information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiffs and Class Members, along with damages stemming from the stress, fear, and anxiety of an increased risk of identity theft and fraud stemming from the Data Breach;

(g)      emotional distress from the unauthorized disclosure of PII to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiffs and Class members;

(h)      loss of the inherent value of their PII;

(i)      the loss of the opportunity to determine for themselves how their personal information is used; and,

(j)      other significant additional risk of identity theft, financial fraud, and other identity-related fraud in the indefinite future.

100.    In connection with the conduct described above, Defendant acted wantonly, recklessly, and with complete disregard for the consequences Plaintiffs and Class Members would suffer if their highly-sensitive and confidential PII, including but not limited to name, address, and Social Security numbers was accessed by unauthorized third parties.

## COUNT II
### Negligence Per Se
### (On behalf of Plaintiffs and the Class against Defendant)

101.    Plaintiffs restate and reallege the preceding factual allegations set forth above as if fully alleged herein.

102.     Section 5 of the Federal Trade Commission Act, 15 U.S.C. §45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect personal information by companies such as Defendant.  Various FTC publications and data security breach orders further form the basis of Defendant's duty.  In addition, individual states have enacted statutes based on the FTC Act that also create a duty.

103.     Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect personal information and not complying with industry standards.  Defendant's conduct was particularly unreasonable given the nature and amount of personal information it obtained and stored and the foreseeable consequences of a data breach.

104.     Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

105.     Plaintiffs and Class Members are consumers within the class of persons Section 5 of the FTC Act was meant to protect.

106.     Moreover, the harm that has occurred is the type of harm that the FTC Act was intended to guard against.  Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiffs and the Class.

107.     As a direct and proximate result of Defendant's negligence, Plaintiffs and Class Members have suffered injuries, including:

    a.     Theft of their PII;

    b.     Costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

c.  Costs associated with purchasing credit monitoring and identity theft protection services;

d.  Lowered credit scores resulting from credit inquiries following fraudulent activities;

e.  Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f.  The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII being placed in the hands of criminals;

g.  Damages to and diminution in value of their PII entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiffs' and Class Members' data against theft and not allow access and misuse of their data by unauthorized persons;

h.  Continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' data; and,

i.  Emotional distress from the unauthorized disclosure of PII to strangers who likely have nefarious intentions and now have prime opportunities to

commit identity theft, fraud, and other types of attacks on Plaintiffs and Class members.

108.    As a direct and proximate result of Defendant's negligence, Plaintiffs and Class Members have been injured as described herein, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

## COUNT III
**Declaratory Judgment**
**(On behalf of Plaintiffs and the Class against Defendant)**

109.    Plaintiffs restate and reallege the preceding factual allegations set forth above as if fully alleged herein.

110.    Under the Declaratory Judgment Act, 28 U.S.C. §§2201 *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as the ones alleged here, that are tortious and violate the terms of the federal and state statutes described in this complaint.

111.    An actual controversy has arisen in the wake of the Defendant's Data Breach regarding its present and prospective common law and other duties to reasonably safeguard consumers' personal identifying information being transferred through its secure file transfer program, and regarding whether Defendant is currently maintaining data security measures adequate to protect Plaintiffs and Class Members from further data breaches that compromise their personal information.  Plaintiffs and Class Members continue to suffer an injury as a result of the compromise of their personal information and remains at imminent risk that further compromises of their personal information will occur in the future.

112.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

(a)    Defendant continues to owe a legal duty to secure consumers' personal information, including Plaintiffs' and Class Members' personal information, and to timely notify them of a data breach under the common law, Section 5 of the FTC Act; and,

(b)    Defendant continues to breach this legal duty by failing to employ reasonable measures to secure Plaintiffs' and Class Members' personal information.

113.    The Court should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect Plaintiffs' and Class Members' personal information.

114.    If an injunction is not issued, Plaintiffs will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach of Defendant.  The risk of another such breach is real, immediate, and substantial.  If another breach of Defendant occurs, Plaintiffs will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

115.    The hardship to Plaintiffs if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued.  Among other things, if another massive data breach occurs, Plaintiffs and Class Members will likely be subjected to substantial identity theft and other damage.  On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

116.    Issuance of the requested injunction will not disserve the public interest.  To the contrary, such an injunction would benefit the public by preventing another data breach, thus eliminating the additional injuries that would result to Plaintiffs and the thousands of Class Members whose confidential information would be further compromised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, and the Class, pray for the following relief:

A.    An order certifying the Class as defined above pursuant to Fed. R. Civ. P. 23 and declaring that Plaintiffs are proper class representatives and appointing Plaintiffs' counsel as class counsel;

B.    An order finding in favor of Plaintiffs and the Class on all counts asserted herein;

C.    Permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein;

D.    Compensatory, consequential, general, and nominal damages in an amount to be proven at trial, in excess of $5,000,000;

E.    Disgorgement and restitution of all earnings, profits, compensation, and benefits received as a result of the unlawful acts, omissions, and practices described herein;

F.    Awarding Plaintiffs' reasonable attorneys' fees, costs, and expenses;

G.    Awarding pre- and post-judgment interest on any amounts awarded; and,

H.    Awarding such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiffs, on behalf of themselves and the putative Class, hereby demand a trial by jury on all issues of fact or law so triable.

DATED: August 22, 2023                    Respectfully submitted,


                                          /s/    Joseph P. Guglielmo
                                          Joseph P. Guglielmo (Bar No. 671410)
                                          Amanda M. Rolon (*pro hac vice forthcoming*)
                                          **SCOTT+SCOTT**

**ATTORNEYS AT LAW LLP**
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile: 212-223-6334
jguglielmo@scott-scott.com
arolon@scott-scott.com

**LAW OFFICE OF
ALFRED G. YATES, JR., P.C.**
Alfred G. Yates, Jr. (*pro hac vice forthcoming*)
1575 McFarland Road, Suite 305
Pittsburgh, PA 15216
Phone: (412) 391-5164
Fax: (412) 471-1033
e-mail: yateslaw@aol.com

*Attorneys for Plaintiffs*